# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 03-CR-7-TCK |
| MARK ALLEN WINGO, | ) ) Civil No. 09-CV-399-TCK-TLW ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 83) ("§ 2255 Motion") and the Government's response (Doc. 94).[1]

**I.      Background**

On March 3, 2003, Defendant Mark Allen Wingo ("Defendant") pled guilty to a single count of uttering a counterfeit security in this case, 03-CR-7-TCK ("03-7"). On May 5, 2003, the Court sentenced Defendant to sixteen months, to run consecutively to a revocation sentence imposed in a prior criminal case, 99-CR-116. On February 7, 2006, Defendant stipulated to the allegations in an Order on Supervised Release (Doc. 33), and the Court revoked his term of supervised release. During a sentencing hearing on September 13, 2006, the Court declined to impose a custodial term but re-imposed a three-year term of supervised release. On December 3, 2007, the Court entered a second Order on Supervised Release (Doc. 55). Certain allegations therein formed the basis of a

---

[1] Defendant has been released since the filing of his § 2255 Motion, but this does not render the motion moot. *Prost v. Anderson*, 636 F.3d 578, 582 (10th Cir. 2011) ("[A] habeas petition challenging a conviction isn't mooted by a prisoner's release from incarceration because the Court is willing to presume that the fact of conviction has continuing collateral consequences.") (internal quotations omitted).

new criminal case, 08-CR-37-TCK ("08-37"), which was filed March 4, 2008. On March 6, 2008, represented by retained counsel Robert Durbin ("Durbin"), Defendant pled guilty to the charges in 08-37 and stipulated to four of the five alleged violations in the Order on Supervised Release in 03-7. The fifth violation, which alleged that Defendant offered and sold unregistered securities in a corporation known as Airgonomics, Inc. ("Airgonomics"), was dismissed by the United States.

On June 23, 2008, the Court conducted a sentencing hearing in this case and 08-37. The United States sought permission to call Bobby Joe La-Fever ("La-Fever") as a witness to testify regarding Defendant's "activities on behalf of Airgonomics, especially in the month of May." (Tr. Sent. H'rg, Ex. B to Resp. to § 2255 Motion, at 5.) Durbin objected to the presentation of any evidence involving Airgonomics. (*Id.* at 4.) The United States argued that it was not offering La-Fever's testimony "to create an issue as to whether there [was] a new violation of conditions of supervised release" but was offering it solely on the question of whether Defendant "should be able to self-surrender if a custodial sentence is imposed." (*Id.* at 5.) The Court permitted La-Fever to testify. Durbin elected not to call any witnesses. In regard to La-Fever's testimony, the Court stated: "None of this is particularly helpful. And the Court will not admit any of the exhibits proffered by the government." (*Id.* at 23.)

The Court sentenced Defendant to 21 months in 03-7, to run consecutively to the 21 month sentence imposed in 08-37. The Court did not order any restitution in 03-7 but ordered $20,400 in restitution in 08-37. While sentencing Defendant in 08-37, the Court stated:

> The criminal history includes 11 felony convictions, including four prior federal offenses. The last time I think . . . I gave him a zero month custody term in September of 2006. Mr. Durbin, we've already had the 'let's show leniency' situation with Mr. Wingo. And with a criminal history category of six, and the fact that he's been before me too many times, that doesn't resonate anymore.

2

(*Id.* at 33.) On June 23, 2009, Defendant filed a timely § 2255 Motion in this action, 03-7, arguing that Durbin rendered ineffective assistance of counsel in five ways. The Court will address each argument below.[2]

## II. Ineffective Assistance Claims

Defendant's § 2255 Motion is governed by the standards outlined in *Strickland v. Washingston*, 466 U.S. 668 (1984), which has two components. First, a defendant must "show that counsel's performance was deficient." *DeRosa v. Workman*, 679 F.3d 1196, 1208 (10th Cir. 2012) (internal quotation omitted). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (internal quotations omitted). Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* (internal quotations omitted). This requires a defendant to demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *United States v. Rushin*, 642 F.3d 1299, 1309 (10th Cir. 2011). A defendant must make both showings in order to demonstrate that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable." *DeRosa*, 679 F.3d at 1208 (internal quotations omitted).

### A. Failure to "Properly" Object to Evidentiary Hearing

Defendant argues that, although Durbin did object to the United States' presentation of La-Fever, Durbin did so in a deficient manner. Specifically, Defendant contends that Durbin "should have argued that because the plea agreement included the condition of the removal of any issues

---

[2] Defendant did not file a § 2255 Motion in 08-37.

3

related to [Airgonomics] . . ., [the Court] should not grant the government's request to hold an evidentiary hearing to explore an issue related to [Airgonomics]." (§ 2255 Motion 30.)

Defendant's argument is factually flawed. Prior to La-Fever's testimony, Durbin made the following objection: "We're going to object to the presentation of any evidence with respect to any issue involving Airgonomics, Inc. My understanding of one of the components of our plea agreement was that that particular allegation was to be stricken, and in fact the court did strike it on our last court appearance . . . ." (Tr. Sent. H'rg, Ex. B to Resp. to § 2255 Motion, at 4.) Thus, Durbin did object on the precise grounds articulated by Defendant in his § 2255 Motion, and his performance could not be deemed deficient in any manner.

Assuming Durbin did not "properly" object and assuming this was somehow deficient performance, it did not prejudice Defendant's for three reasons. First, La-Fever's testimony was presented solely for the purpose of determining whether Defendant would be permitted to self-report, and the Court considered the testimony solely for that purpose. Thus, any deficient performance related to La Fever's testimony had no impact on the length of Defendant's sentence. Second, even assuming the testimony was offered or considered for purposes of increasing Defendant's sentence, the Court found La-Fever's testimony "not particularly helpful" and failed to admit any of the United States' exhibits proffered through La-Fever. Third, the Court ultimately permitted Defendant to self-report, thus ruling in favor of Defendant on the limited question for which La Fever's testimony was presented. Any alleged deficient performance did not prejudice Defendant in any way and certainly did not impact the length of his sentence.[3]

---

[3] These three reasons for a lack of prejudice also apply to the alleged performance deficiencies explained *infra* Part II.B and II.C.

### B. Failure to Interview La-Fever Prior to Hearing

Durbin conducted a thorough cross-examination of La-Fever and even caused La-Fever to admit that he would participate in Airgonomics with Defendant, when and if Defendant was released from prison. (*See id.* at 22.)[4] Durbin's performance in cross-examining La-Fever was not deficient based on his failure to interview him prior to the hearing. Assuming it was somehow deficient, it caused no prejudice to Defendant for the same three reasons explained *supra* Part II.A.

### C. Failure to Object to "Court's Decision Not to Allow the Defense to Call Witnesses"

Defendant argues that the Court "did not allow [Durbin] to call its own witness, Ray Heath" and that Durbin should have (1) objected to this ruling, (2) called Ray Heath as a witness, (3) called United States Probation Officer Randall Drew as a witness, and (3) called Jeff Martin as a witness. Again, Defendant's argument is factually flawed. The following exchange occurred during the hearing:

> Mr. Durbin: Your Honor, Mr. Heath is here. I didn't realize he was going to be here. If you want to hear from him, we can put him on the witness stand. I don't intend to call him otherwise. If you feel the need for his testimony, I'll be happy to present him.
> The Court: I'm not going to call him.
> Mr. Durbin: Mr. Heath, come forward, please.
> The Court: Are you calling him?
> Mr. Durbin: Yes, sir, if –
> The Court: For what purpose?
> Mr. Durbin: Mr. Heath, never mind. I've changed my mind, Your Honor.
> The Court: All right. None of this is particularly helpful. And the court will not admit any of the exhibits proffered by the government.

(*Id.* at 22-23.) Thus, the Court did not "prevent" Defendant from calling witnesses, and there can be no deficient performance based upon Durbin's failure to object to such a ruling. Further,

---

[4] As noted in the transcript, this drew applause from the gallery. (*See id..*)

Durbin's decision not to call Heath or any other rebuttal witnesses was a reasonable decision based on the insignificance of La-Fever's testimony. Such decision was confirmed when this Court explained that it found La-Fever's testimony unhelpful. Therefore, Defendant has failed to show any deficient performance in this regard. Assuming that failing to call rebuttal witnesses on the self-reporting issue was somehow deficient performance, Defendant failed to show any resulting prejudice for the same three reasons explained *supra* Part II.A.

### D. Failure to Object to Erroneous Statements in Pre-Sentence Report ("PSR")

Defendant argues that Durbin was ineffective by failing to object to certain inaccuracies in the PSR related to the amount of restitution and his employment status. The Court did not order restitution in this case, 03-7, and any failure to object to the restitution amounts in the PSR had no impact on this action. Further, the amount of restitution imposed by the Court cannot be challenged by a § 2255 Motion. *See United States v. Satterfield*, 218 Fed. Appx. 794, 796 (10th Cir. 2007) (citing *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir.2003)) (holding that the defendant could not "challenge the amount of restitution awarded by way of a § 2255 motion" because "he [was] not 'claiming the right to be released' from custody based on his claim); *United States v. Papa*, 97 Fed. Appx. 848, 851 (10th Cir. 2004) (same); *United States v. Johnson*, No. CR-008-222-M, 2010 WL 3749396, at * 1-2 (W.D. Okla. Sept. 21, 2010) (same).

To the extent Defendant argues that failure to object to certain facts in the PSR impacted his custodial sentence, Defendant has failed to make the requisite showing of prejudice. As explained by the Court during sentencing in 08-37, the sentences were based on Defendant's extensive criminal history and the prior leniency granted to Defendant upon his first violation of supervised

6

release. Thus, Defendant did not suffer any prejudice as a result of any factual inaccuracies in the PSR to which Durbin failed to object.

E. **Failure to Object to Conditions of Supervised Release**

Defendant contends that Durbin failed to object to a condition of supervised release precluding him from self-employment without permission from the United States Probation Office. This argument is also factually flawed because the Court did not order any term of supervised release in this case. Such condition was imposed in 08-37. Further, assuming the Court could somehow grant relief in 08-37 based on a § 2255 Motion filed in this case, there is no reasonable probability that Durbin's objection would have influenced the Court's decision to impose this condition, which was a matter entirely within the Court's discretion. *See United States v. Edgin*, 92 F.3d 1044, 1048 (10th Cir. 1996).

III. **Certificate of Appealability**

Rule 11 of the *Rules Governing Section 2255 Cases in the United States District Courts* instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim

7

of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Court's ruling is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

**V.     Conclusion**

Defendant's § 2255 Motion (Doc. 83) is DENIED. Defendant's Motion to Issue Show Cause Order (Doc. 85) and Motion for Status Hearing (Doc. 88) are DENIED as moot. The Court will enter a separate judgment.

**SO ORDERED this 23rd day of August, 2012.**

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**